AMERICAN RY. EXP. CO. *v.* WRIGHT.

[91 South. 342. In Banc. No. 22338.]

1. CARRIERS. *"Express company" is defined as a common carrier of parcels.*

   An "express company" is a firm or corporation engaged in the business of transporting parcels or other movable property in the capacity of a common carrier.

2. BAAILMENT. *Express company is not warehouseman or bailee for hire.*

   An express company is not engaged in the business of a warehouseman or of a bailee for hire.

3. MASTER AND SERVANT. *Master not liable for servant's acts outside of authority.*

   A master is not responsible for the acts of his servant committed outside of the real or apparent scope of the servant's authority.

128 Miss.—38

Or, as sometimes expressed, a master is not responsible for the acts of his servant which are outside of the line of duty of the servant.

4. MASTER AND SERVANT. *Insulting language in express office held not used in carrier's business.*

Where a person went to the office of an express company for the purpose of shipping two express packages, and was requested by the servant of the express company to wait until the agent in charge of the office came back to see whether or not the packages were properly wrapped, whereupon the person requested the employee to be allowed to have a fur and umbrella in the office until her return, which permission was granted, and upon her return perfected the shipping of the two packages by express, and asked the employee for her fur and umbrella, and was given the umbrella and told that she had not left the fur there, when she left the office and later returned and asked again for the fur, and was then insulted and abused by the servant of the express company, in a suit for actual damages for the value of the fur and for punitory damages *held*, that the leaving of the fur in the office was not a part of the master's business, that it was not within the real or apparent scope of the authority of the employee to allow it to be left there, and that the alleged abusive and insulting language was not used when the person was in the office transacting her business with the express company; under this state of facts a peremptory instruction in favor of the express company should have been given.

5. MASTER AND SERVANT. *Express company held not liable for insulting language by employee.*

When the plaintiff had completed the sending of the express packages, and left the office, and returned at a later period and demanded the return of her fur from the employee of the express company, whereupon the employee abused and insulted her, at this time her business with the master had been completed, and her return to the office was upon her private business, disconnected from her business with the company, and the altercation did not arise during the transaction of the master's business, for which the master is not responsible.

APPEAL from circuit court of Sunflower county.

HON. S. F. DAVIS, Judge.

Suit by Mrs. Eulalie Wright against the American Railway Express Company. Judgment for the plaintiff, and the defendant appeals. Reversed, and judgment rendered for the defendant.

*Moody & Williams,* for appellant.

The first question that naturally presents itself, is as to the authority of the agent to bind the company as bailee or otherwise for the care of the furs. The declaration charges that the defendant was engaged in the business of a common carrier for hire in the state of Mississippi, carrying, for hire and reward, express packages tendered to it for carriage, by the public, and that in the conduct of such business it conducted and maintained an office and agent in the town of Shaw, same, being maintained by the defendant for the purpose of receiving and sending express packages for hire and reward.

Rule 51, of the company expressly forbids any of its agents to receive for deposit or safekeeping, checks, certificates of deposit, drafts, notes, papers of value, or any other matter which has no relation to the business of the company . . . or to undertake any transaction in the company's name that does not pertain to the express and the forwarding business.

On these admitted facts it is thus clear that the agent could not bind the appellant by permitting the appellee to let her leave my (her) things there while I (she) ran down to the post office and mailed a package, which "things" she describes as her packages and umbrella and fur. This is also true even though the agent, when asked if she might leave them there, said that was alright. The principles of law applicable to the authority of agents of common carriers is clearly stated in 10 Corpus Juris, 216. If the appellant, is liable at all, for the value of the furs, it is perfectly clear that it is not liable as a common carrier or even as a bailee, gratitous or otherwise.

The appellee did not go to the express office to have transported the fur, for the value of which this suit was brought. She went there to send two packages by express. She made three visits to the express office; on her first visit she desired to send the two packages by express, but at that time they were not received, the question coming

up as to whether they should be rewrapped. Therefore, had these packages, not the furs, been stolen, before her second visit, the appellant would not have been liable as a common carrier because even these packages at that time, had not been delivered to or accepted by the appellant, 10 Corpus Juris, page 21.

She does not, however, sue for the loss of the packages. She sues for the loss of the furs, which were not even intended for shipment. The defendant—appellant—was engaged in the business of transporting express matter for hire and was thus a common carrier. Mrs. Dolhonde, the agent, had authority to transact business for it of that character, but was expressly forbidden to transact other business. Under some circumstances the appellant, as a common carrier, might be liable as bailee. It cannot, however, be liable except as to property tendered or accepted for transportation.

The fact that the agent was employed by the appellant, and in the performance of her duties, at the time, does not change the rule. The act complained of was not in line with the agent's employment and it was never intended that the appellant, as a common carrier, should have control of the furs when left in its office. It was solely for the accommodation to the plaintiff when the agent permitted, if she did, them to be left on the counter.

The rule relied on has been announced by this court, as to the injuries to the persons, in several cases. *Railway Company* v. *McAfee,* 71 Miss. 73; *Railway Company* v. *Harris,* 71 Miss. 74; *Railway Company* v. *Latham,* 72 Miss. 32; *Andrews* v. *Y. & M. V. Railroad Co.,* 86 Miss. 129.

It will be noted that this suit is for the loss of the fur, and that the alleged abusive language, in connection with that loss, was introduced to aggravate the damages. The cause of action relied on is not the abusive language, but the loss of the fur. If, however, the suit had been instituted for the abusive language, the plaintiff could not recover, because such abuse did not grow out of any business in which the company was interested, or any busi-

ness which the agent was authorized to transact, or at a time when the agent was transacting her master's business. The alleged abuse took place on a subsequent visit to the express office, at which time she went to see the plaintiff about the fur. On a prior visit she had gotten her receipt for the packages. Her transaction with the appellant was at an end. Subsequently she again went to the express office to see about her fur. A private matter. It was at this time, and not before, that the alleged abuse occurred.

It is thus clear that the rule announced in *Richburger* v. *American Express Co.,* 73 Miss. 161, has no application for the reason that, at the time of the alleged abuse, the plaintiff and Mrs. Dolhonde were discussing a private matter in which the company had no concern, and at a time when the plaintiff was not in the office to transact business with the appellant.

LIABILITY AS BAILEE ARGUED BUT NOT CONCEDED. Assuming, for the sake of argument and only for that purpose, that the act of Mrs. Dolhonde, in permitting the appellee to leave her furs on the counter until she mailed a package was the act of the appellant; then the most that can be claimed by reason of that transaction, is that the appellant became a gratituous bailee. Thus far, and only thus far, can it be claimed she acted for appellant. Its liability then must be determined not as a common carrier, but as that of a gratituous bailee.

The question then presents itself; would it be liable for a theft of the furs by one of its employees? The fact that the furs were alleged to have been stolen by the servant, who bound it as gratuitous bailee, is immaterial so far as its liability is concerned. The liability is no greater, by reason of the alleged theft by Mrs. Donhonde, than it would be by that of any other servant. It is the well-established rule in cases of this sort that the bailee is responsible only for gross negligence, the rule being uniform not only in foreign jurisdictions, but as announced by our court.

In contracts of this kind the doctrine seems now to be established both in England America that a mandatory is liable in all cases for gross negligence only. Story on Railments, sec. 181. We recognize the correctness of this rule and shall adhere to it. *Lampley* v. *Scott*, 24 Miss. 528.

Regardless of the character of the bailment in this case the defendant was not an insurer of the fur. 3 R. C. L., page 93; *Archer* v. *St. Clair*, 49 Miss. 346; *Caldwell* v. *Hall*, 60 Miss. 330; *Sharborough* v. *Webb*, 59 Miss. 449; *Batesville Gin Co.* v. *Whiten*, 50 So. 695; *Meridian Fair* v. *Railway Co.*, 70 Miss. 808, 12 So. 555.

The question now arises, is the bailee liable for the theft of bailed property by its own servants? We desire to call attention to the well-considered case of *Foster* v. *Essex Banks*, 17 Mass. 479, 9 Am. Dec. 168.

The case is in all respects like the one before us, except that the goods were to be kept for hire; and the difference is altogether in favor of the defendants in the present case. To the same effect see *Lloyd* v. *West Branch Bank*, 53 Am. Dec. 581; *Anna E. Gerrish* v. *Muskegon Savings Bank*, 138 Mich. 46; 4 Am. & English Annotated Cases, page 1083. To the same effect is the English case of *Cheshire* v. *Bailey*, 1 K.B. 237; 1 A. and E. Annotated Cases, 94; *Railroad Co.* v. *Hartz*, 88 Miss. 42.

We respectfully submit that the evidence does not support the verdict, and that granting the evidence for the plaintiff was true, still it is not a case where the express company is liable, and the judgment should be reversed and judgment entered here for the appellant.

*Frank E. Everett*, for appellee.

Counsel next takes up the authority of the agent to bind the appellant, and their brief then proceeds along the line that in order to bind the company, the agent would have to have express authority to receive any package in its office, and contend that rule 51 of the company, which was introduced in evidence, which provides that agents are for-

bidden to receive for deposit or safe-keeping checks, certificates of deposit, drafts, notes, papers of value, etc., expressly prohibits and renders the company harmless for the theft of a package or an article by the employee of the company, and then counsel branches off on a long theory of the defendant's liability as bailee.

Counsel cites—*Railway Company* v. *McFee,* 71 Miss. 73, as authority for the fact that the company is not liable because the agent was not acting in her capacity as. agent when this fur was purloined, so to speak. There is absolutely nothing in that case to help counsel. McFee was a trespasser on the train, riding without paying any fare, and they had a perfect right to put him off. Mrs. Wright was not a trespasser in the office of the express company. She had a perfect right there, and was trying to transact business with the company, and would have transacted that business, and left with her fur secure about her neck had Mrs. Dolhonde not requested that she leave the parcels until her husband returned.

The case of *Railway Company* v. *Latham,* 72 Miss. 33, cited by counsel, has no application, because Latham was a trespasser on the train, stealing a ride, and it was the duty of the servants of the company to put him off. Neither has the *Railway Company* v. *Harris,* 71 Miss. 74, any application, because this fur was taken by the agent of the company before the packages had even been receipted for and accepted by the company. In other words, during the time of the transaction of business with the company, this fur was stolen.

Counsel cites *Anderson* v. *Y. & M. V. Railway Company,* 86 Miss. 129. This does not apply. In that case, there was no relation whatever of carrier and passenger. Anderson, as stated by him, was simply sponging, on the gratuities of the agent of the railway company, in his personal capacity, and not as an agent of the company, and that trouble arose over a remark that Anderson had made personally about Travis, the agent. Mrs. Wright had a right in the office of the express company. She had been

requested to leave her packages for shipment until the agent came in that he might see about rewrapping them, and before he came in to see about them, her fur was stolen, after which, she was given a receipt for the packages, which she desired to express. Her business had not been concluded when her fur was stolen by the employee of the express company, and counsel admits in his brief that had these packages been stolen by the agent of the company·before they had receipted for the packages to be shipped, that the company would have been liable.

We call the court's attention to *Y. & M. V. Railway Co.* v. *May,* 104 Miss. 422, where a young man had been fired by the railway company, and when he went back to the office to get his pay, one of the employees of the railway company kicked him out of the office and used all sorts of vile and insulting language towards him, and this court held that the railway company was responsible to him in damages for the discourteous treatment shown him.

I call the court's further attention to the case of *Y. & M. V. Railway Company* v. *Mattingly,* 37 S. R. 709. I also call the court's attention to the case of *Barrymore* v. *Railway Company,* 85 Miss. 441, where the court held the railway company liable in that case for the acts of its servants when he had departed very much more from his line of duty than Mrs. Dolhonde had from hers in the present case.

The language of the court in *Richberger* v. *Express Co.,* 73 Miss. 171, fits the present case exactly. The master who puts an agent in a place of trust or commits to him the management of his business or the care of his property, is justly held responsible when his servant through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances, goes beyond the strict line of his duty and authority, and inflicts unjustifiable injury upon another. I can see no difference, when it refers to a right of action, in Mrs. Dolhounde assaulting Mrs. Wright while she was attending to the business of her master, and in her taking

from Mrs. Wright the fur in the manner in which she did.

Mrs. Wright was not a trespasser in the office of the company; she had a right to be there, was there for the purpose of transacting business with the company and was entitled to be treated with courtesy and not have her belongings pilfered or taken from her by the employee of the company, while she was attempting to transact business with the company. Therefore, I submit that this case should be affirmed.

Sykes, J., delivered the opinion of the court.

The appellee sued the appellant express company for actual and punitory damages growing out of the following state of facts as testified to by appellee (plaintiff): On or about the 12th day of May, 1920, the appellee wished to send two packages by express over the line of the appellant company. She went to the office of this company in Shaw, Miss., and there found in charge of the office the wife of the agent of the express company, who was also an employee of the company. When she tendered the packages for shipment to this employee, she was told that it might be necessary for them to be rewrapped, and she would prefer to wait until her husband came in before accepting them. The appellee then asked her if she might leave her fur and umbrella in the office for a few minutes while she went to the post office, and was told that she could. She then left the two packages she desired shipped, her fur, and umbrella upon a counter in the office and went out. As she was leaving the office she looked back either through the door or window and saw this employee pick up her fur. In a few minutes she returned to the office and found that the agent had returned. Whereupon she was issued a receipt for the two packages she wished to send by express. She inquired for her fur and umbrella, and was told by the woman employee that she did not leave her fur, but was given her umbrella. She then left the office and came back twice more within a short time,

making inquiry for the fur on each of these trips. Upon the last trip she stated that when she asked for the fur the lady employee of the express company abused and mistreated her. She testified that the value of the fur was four hundred and fifty dollars.

Without setting forth in detail the testimony introduced on behalf of the appellant (defendant in the lower court), it is sufficient to say that there was a material conflict in the testimony as to whether or not the fur was left in the office of the appellant company and as to whether or not this employee abused and mistreated the appellee (plaintiff). The case was submitted to the jury, and a verdict for nine hundred dollars was returned in favor of the plaintiff, upon which verdict a judgment in accordance therewith was entered by the court, and from which judgment this appeal is here prosecuted.

At the conclusion of the introduction of the testimony for the plaintiff in the court below, the defendant made a motion to exclude the testimony, and for a peremptory instruction. At the conclusion of all the testimony for both sides a peremptory instruction was asked and refused for the defendant.

There was also introduced by the defendant a rule of the defendant company under which rule agents and employees are forbidden to receive for safe-keeping any matter which has no relation to the business of the company, or to transact in the company's name any business that does not pertain to the express and forwarding business. It was shown that a copy of this rule is in the hands of all of the agents of the defendant company.

While there are several assignments of error, it is only necessary for us to deal with the question of whether or not the defendant in the lower court was entitled to a peremptory instruction.

Under section 195 of the Constitution, an express company in this state is made a common carrier in its respective line of business, and subject to liability as such. A very good definition of an express company is:

"A firm or corporation (usually a corporation) engaged in the business of transporting parcels or other movable property, in the capacity of common carriers, and especially undertaking the safe carriage and speedy delivery of small but valuable packages of goods and money."

See *Alsop* v. *Southern Exp. Co.*, 104 N. S. 278, 10 S. E. 297, 6 L. R. A. 271.

It is a well-known fact that practically every town within the United States has within it the office of some express company for the transmission of packages. The business of an express company is well known and understood throughout the entire United States. It is well known and understood that its business is the transmission and delivery of packages, for which it receives a compensation. It is in no sense of the word engaged in the business of a warehouseman, or bailee for hire. Though it is possible in some instances, where packages intended for transmission are temporarily left in the office before the contract of transmission is consummated, that as to them the relation of bailor and bailee may arise. In the case at bar the plaintiff went to the office of the express company to send two express packages, and as a matter of fact these packages were finally accepted for transmission by the company. She did not go there, however, to send either her umbrella or fur by express; she merely took these articles with her. For her own convenience, before she had finished her business of sending the two packages by express, she asked and was granted permission by this employee to leave her fur and umbrella upon the counter in the office of the defendant company while she went elsewhere. Her business with the express company was to send the two packages by express. Leaving her fur and umbrella in the office of the company was no part of her business transaction with the company. It was not within the real or apparent scope of this employee's business to make the express company a gratuitous bailee of this fur and umbrella. The leaving of the fur and umbrella was a private matter wholly between the plaintiff and the employee of the express company in her individual capacity, and in

no sense was she acting in this matter for the express company, but her act was plainly outside of her line of duty as an employee of the company. The authorities in this state, as well as elsewhere, are practically unanimous that the master is not responsible for the acts of his servant which are "outside the line of duty of the servant." *Richberger* v. *Express Co.*, 73 Miss. 170, 18 So. 922, 31 L. R. A. 390, 55 Am. St. Rep. 522.

In the language of this court in the case of *Railway Co.* v. *McAfee*, 71 Miss. 70, 14 So. 260:

"The whole thing was an unauthorized arrangement to suit the views of the participants, and not to serve the company, and it is not responsible for what happened by design or accident."

See, also, *Railroad Co.* v. *Latham*, 72 Miss. 34, 16 So. 757; *Express Co.* v. *Fitzner*, 59 Miss. 581, 42 Am. Rep. 379.

Neither is the express company liable for damages for any abusive or insulting conduct of this lady employee to the appellee. At the time this altercation is alleged to have taken place the appellee was not in the office of the company to transact business with the company. Her business with the company had been completed on her second visit to this office. Her last trip to the office was made solely for the purpose of transacting her private business, namely, attempting to get this fur. The altercation is therefore not so connected with her business with the company as to become a part of one transaction, therefore a part of the *res gestae*, as were the cases of *Richberger* v. *Express Co., supra,* and *Railroad Co.* v. *May,* 104 Miss. 422, 61 So. 449, 44 L. R. A. (N. S.) 1138.

In this case the express company is neither liable for the value of the fur nor for damages because of the alleged conduct of its employee toward the plaintiff. The peremptory instruction requested by the plaintiff should have been given. The judgment of the lower court is reversed, and judgment will be entered here for the appellant.

Reversed, and judgment here for appellant.

*Reversed.*